MOORE, Judge.
M.D.C. appeals from a judgment of the Tuscaloosa Juvenile Court (“the juvenile court”) dismissing a petition for M.D.C.’s involuntary commitment filed by his mother, K.C. We affirm.[1]
On or about March 8, 2008, M.D.C. was accused of shooting and killing J.D.F. with a semi-automatic handgun. On March 11, 2008, the State of Alabama moved to transfer proceedings in the juvenile court involving M.D.C. to criminal court, pursuant to § 12-15-34, Ala.Code 1975; that *894 request was filed under ease no. JU-04-658.17.
On March 18, 2008, M.D.C.’s mother, K.C. (“the mother”), filed in the juvenile court a petition for the involuntary commitment of M.D.C.; that petition was assigned case no. JU-04-658.18. The mother asserted in her petition that M.D.C. is “mentally ill and poses a real and present threat of substantial harm to himself or others.” She further asserted, among other things, that
“[M.D.C.] has a long history of out of control behaviors, trouble controlling his anger and trouble sleeping. While in Southern Oaks Center in August 2007, he had medication prescribed for him for mental health issues; however, when he was released the family was not given any prescriptions for [M.D.C.], therefore, [M.D.C.] is not currently taking any medications. Several of [M.D.C.] ’s family members suffer from mental health issues. On or about March 8, 2008, [M.D.C.] allegedly caused the death of [J.D.F.] by shooting him multiple times with a semi-automatic handgun. [M.D.C.] is currently placed in the Tuscaloosa County Juvenile Detention Facility and is presently on suicide watch. [M.D.C.] has previously undergone a psychological evaluation that indicated that [M.D.C.] suffers from mental health issues.”
The juvenile court entered an order on March 18, 2008, appointing Cheryl Stahl as M.D.C.’s guardian ad litem and scheduling a hearing on the State’s and the mother’s motions for March 14, 2008. At that hearing, the guardian ad litem submitted excerpts of a 2006 psychological evaluation that had been performed on M.D.C. and requested that the juvenile court order a new psychological evaluation of M.D.C. before addressing the State’s transfer request. M.D.C.’s defense attorney submitted the 2006 psychological evaluation as an exhibit.
Monte Petersen, M.D.C.’s probation officer, who testified with regard to only the State’s motion to transfer, testified that M.D.C. had been in the court system since July 2004. According to Petersen, as part of the probation office’s rehabilitative efforts, M.D.C. had been placed at various times in Thomasville Boot Camp; Camp Cobia, a therapeutic group home; Teen University, which is also called New Life Center for Change; and Southern Oaks Center, a group home for boys.
The mother testified at the hearing that, when M.D.C. had been released from Southern Oaks, she had received a telephone call and learned that M.D.C. was suffering from stress and depression, that he had not been sleeping well, and that he had been prescribed Zoloft and another medication. She stated that, since he had returned home, M.D.C. had been saying that he was ready to die and kill himself, had not been sleeping well, and had not had a good appetite. The mother testified that M.D.C. had been walking around the house with his head down and that he sometimes would sit “like he’s just in outer space.” She stated that she was concerned that he would be a danger to himself or to others. According to the mother, members of her family suffer from mental-health issues and, based on her and other members of her family’s diagnoses, she was concerned about M.D.C.’s behaviors. The mother testified that M.D.C. was not on any medications to address any mental-health issues and that he had not been on any such medications since his release from Southern Oaks in August 2007. The mother also testified that she had not taken M.D.C. for mental-health treatment since his release from Southern Oaks and that she was aware that, at the time of the hearing, he was on suicide watch in the juvenile-detention facility.
*895 On March 14, 2008, the juvenile court entered an order on the case-action-summary sheet in case no. JU-04-658.18, stating, in pertinent part: “[Bjased on the evidence and based on the Petition, IT IS ORDERED that the Petition is dismissed as the face of the Petition and the testimony demonstrate that the Petition is totally without merit.” (Capitalization in original.) Apparently, the juvenile court also transferred the criminal aspect of the proceedings — i.e., JU-04-658.17 — to the circuit court. (MJD.C.’s brief, p. 3.)
On March 25, 2008, M.D.C. appealed the dismissal of the petition for involuntary commitment to the Court of Criminal Appeals. That court transferred the appeal to this court on September 29, 2008. As we stated in note 1, supra, the appeal was transferred back to the Court of Criminal Appeals and then to the Alabama Supreme Court before ultimately being transferred back to this court on August 15, 2012.
In M.D.C.’s brief on appeal, M.D.C. raises one issue: “Did the [juvenile court] err in granting the State’s motion for transfer of case to criminal court.” The standard of review stated in M.D.C.’s appellate brief speaks only to the transfer of the criminal aspect of the case from the juvenile court to the circuit court for disposition. Additionally, the overwhelming majority of M.D.C.’s argument on appeal is dedicated to the transfer of the criminal aspect of the case, rather than to the dismissal of the mother’s petition for the involuntary commitment of M.D.C., which is civil in nature. See Clancy v. State, 107 So.3d 1118 (Ala. Crim.App.2012) (noting that a transfer hearing arises out of a delinquency proceeding, which is criminal in nature, while an involuntary-commitment hearing is a civil matter).
The State of Alabama filed its appellee’s brief with the Court of Criminal Appeals on November 13, 2008. In that brief, the State asserted that, because the appeal arose from case no. JU-04-658.18 and, thus, related only to the denial of the mother’s petition rather than to the motion to transfer the criminal aspect of the case, the appeal should lie in this court rather than in the Court of Criminal Appeals. The State also questioned in its brief on appeal whether M.D.C. has standing to appeal the denial of the mother’s petition because, it asserts, the very nature of the mother’s petition is adversarial to M.D.C.
“A party that is not aggrieved by a trial court’s judgment lacks standing to appeal from that judgment, and this court lacks jurisdiction over such an appeal.” Edwards v. Ford, 93 So.3d 99, 103 (Ala.Civ.App.2011). Involuntary-commitment cases arise in an “adversary context.” Dunson v. Christian, 419 So.2d 249, 251 (Ala.Civ.App.1982). In the present case, the dismissal of the petition to involuntarily commit M.D.C. was determined in M.D.C.’s favor. Thus, the outcome did not aggrieve M.D.C. As a result, we conclude that M.D.C. does not have standing to appeal the dismissal of the mother’s petition. Although the arguments on appeal predominantly pertain to the transfer order, as noted by the State, the dismissal of the involuntary-commitment petition is the only matter before this court in the appeal from case no. JU-04-658.18. Thus, because M.D.C. lacks standing, we must dismiss this appeal. See Goodyear Tire & Rubber Co. v. Moore, 900 So.2d 1239, 1240 (Ala.Civ.App.2004).
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. The case was initially appealed to the Court of Criminal Appeals; that court transferred the appeal to this court on September 29, 2008. After reviewing M.D.C.'s brief on appeal, see Clancy v. State, 107 So.3d 1118 (Ala.Ciim.App.2012) (noting that a transfer hearing arises out of a delinquency proceeding, which is criminal in nature, while an involuntary-commitment hearing is a civil matter), this court determined that M.D.C.’s arguments were more properly presented to the Court of Criminal Appeals, and, thus, we transferred the case back to that court for lack of subject-matter jurisdiction on October 23, 2008. On December 11, 2008, the Court of Criminal Appeals requested that the appeal be transferred to the Alabama Supreme Court. On July 30, 2009, the Alabama Supreme Court ordered that the case be transferred to that court. On August 15, 2012, the supreme court entered an order transferring the appeal to this court.